IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARL SELF,

                Plaintiff,

v.

ALANA ACKER, JACOB SCHULLENBERG, JAMES EHLE, JAMES MOORE, JOHNATHON KEONIG, and JANE DOE NOS. 1-4,

                Defendants.

OPINION and ORDER

25-cv-330-wmc

---

CARL SELF,

                Plaintiff,

v.

AMBER FENNIGKOH, JILL WINKLER, ALANA ACKER, JOHNATHON KEONIG, and JANE DOE NOS. 1 and 2,

                Defendants.

25-cv-331-wmc

---

Plaintiff Carl Self has filed these consolidated cases representing himself while incarcerated at Columbia Correctional Institution ("CCI"). Specifically, Self claims the CCI healthcare and correctional staff captioned above violated his Eighth Amendment rights by failing to give him the correct type and doses of insulin for his diabetes on several occasions in 2025, as well as ignoring or refusing to treat his related symptoms and injuries, including loss of consciousness, chest pains, blurred vision, diabetic shock, and falls that injured his shoulder and head. Before the court are plaintiff's motions for preliminary injunctive relief (dkt. #5, at 12-20 in Case No. 25-330; dkt. ##2-3 in Case No. 25-331), as well as motions for sanctions against defendants for submitting an allegedly false declaration regarding his refusal of insulin

on one of the dates in question (dkt. #32 in both cases). For the reasons explained below, all of plaintiff's motions must be denied.

ANALYSIS

Citing eight different incidents in which he claims to have been denied his prescribed insulin on February 28, March 3, 11, 20, 23, 27-28, and April 18, 2025, plaintiff seeks a preliminary injunction ordering his transfer to Waupun Correctional Institution and examination by a doctor specializing in the treatment of diabetes. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

To demonstrate a likelihood of success on the merits, "an applicant for preliminary relief bears a significant burden" to make a "strong" showing as to "how the applicant proposes to prove the key elements of [his] case," albeit not proof by a preponderance of the evidence. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020); *see also Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, No. 25-cv-552-wmc, 2025 WL 2617091, at *1 (W.D. Wis. Sept. 10, 2025) (citing same). In addition, the scope of any injunctive relief must comply with the Prison Litigation Reform Act ("PLRA"), which requires the court to find that the relief: (1) is narrowly drawn; (2) extends no further than necessary to correct the violation of the federal right; and (3) is the least intrusive means necessary to correct the violation of the federal right. *See* 18 U.S.C. § 3626(a)(2); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012).

Given that plaintiff's claims are all governed by the Eighth Amendment, therefore, he must make a strong showing of three things: (1) he needed medical treatment; (2) defendants knew that that he needed medical treatment; and (3) despite the awareness of the need, defendants consciously failed to take reasonable measures to provide the necessary treatment. *See* Federal Civil Jury Instructions of the Seventh Circuit § 7.17 (2017); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). In particular, the decisive question for purposes of deciding plaintiff's preliminary injunction motion turns on whether he is likely to be able to prove that defendants consciously disregarded his need for insulin. Further, in cases like this one, in which medical professionals have provided some care for a prisoner's condition, they can only be found to have consciously disregarded the prisoner's serious medical need if their care is so inadequate that it demonstrates an absence of medical judgment -- that is to say that no minimally competent professional would have responded in that way in similar circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).

Here, defendants argue that because the evidence shows plaintiff was at least offered insulin on the dates in question, and either received his prescribed dose or refused it, he is neither likely to succeed on the merits of his claims nor to be at risk of irreparable harm. In support, defendants have submitted plaintiff's medical records (dkt. #16-1) and a declaration from defendant Alana Acker, the Health Services Manager ("HSM") at CCI (dkt. #27),[1] documenting plaintiff's long history of refusing medical treatment, including his prescribed doses of insulin, despite frequent warnings of the risks of doing so. Defendants also contend

---

[1] Unless otherwise indicated, all docket entries ("dkt.") going forward refer to plaintiff's lead case, No. 25-330.

3

that plaintiff has not sufficiently explained how a transfer to another facility or an appointment with a diabetes specialist would eliminate his alleged risk of harm given his refusals to comply with treatments. In reply, plaintiff generally avers that he never refused his insulin doses and that defendants, especially Acker, are now lying and have falsified his medical records to cover up their actions. (*See* dkt. ##29-30.)

Even so, plaintiff's contemporaneous medical records confirm that he was offered insulin on the dates in question in February, March, and April 2025, and that he either received it (on March 3, 11, and 27), did not require it (on April 18), or refused to take it (on February 28, March 20, 23, and 28). (Dkt. #16-1, at 26, 47, 53, 313-14, 317-19, 329-35, 338-40, 364-65, and 401-04.) Moreover, while relevant to establish a dispute of fact on summary judgment or at trial, plaintiff's blanket assertion that multiple nurses, including many who are not even defendants in these actions, have all been lying and consistently falsifying medical records for months lacks sufficient specificity or evidentiary support to show that he is likely to prevail on his claims, much less entitled to preliminary injunctive relief at this point. Rather, his medical records show that plaintiff has been offered multiple doses of insulin and treatments for his diabetes on a daily basis from November 2024 to June 2025, and he has regularly refused his insulin and other medications throughout this period. (*See* dkt. #16-1, at 53, 123-644.) Accordingly, plaintiff has failed to make a strong showing that he is likely to succeed on his deliberate indifference claims, nor is he likely to suffer irreparable harm given that even plaintiff appears to concede that he is now being offered his prescribed insulin for diabetes without incident. In particular, plaintiff's last alleged denial of insulin occurred almost three months ago, on August 2-3, 2025. (Dkt. #39.) *See Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017) (finding no deliberate indifference where evidence showed that plaintiff is "under active

4

treatment [and] no one [is] ignoring him"); *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (courts must consider the "totality" of a prisoner's care when deciding whether a medical professional has consciously disregarded his serious medical need).

There are two questionable events that merit further discussion, one weighing in defendants' favor and the other in plaintiff's. *First*, plaintiff alleges that on April 18, 2025, he was denied insulin for several hours, which resulted in him having a blood glucose level of 300. (Dkt. #5, at 8.) While his medical record for that day shows that his blood glucose level was much lower, at 123 (dkt. #16-1, at 26), a corrections complaint examiner's report that plaintiff has attached to his declaration references body camera footage clearly showing that plaintiff's blood glucose level was 233, which according to the Assistant Director of Nursing was still not high enough require insulin (dkt. #33-4). In reply, plaintiff acknowledges this video footage but asserts that any level above 150 requires insulin. (Dkt. #29, at 3.) While plaintiff may disagree with his medical providers' decision not to administer insulin on April 18, the Eighth Amendment doesn't *entitle* him to the treatment of his choice or even the best care possible. *Cesal*, 851 F.3d at 722. At minimum, he will need to present evidence establishing a threshold accepted by the medical profession *requiring* the administration of insulin in response to a glucose level of 233. Of course, he will also have to explain his having represented to this court that his actual glucose level was at least 68 milligrams higher.

*Second*, and relatedly, plaintiff also alleges Acker falsely stated in her declaration that plaintiff refused insulin from 7:49 until approximately 10:00 p.m. on February 28, 2025. (*See* dkt. #27, at ¶14.) In support, plaintiff contends that his inmate complaint regarding his failure to receive insulin on that date was affirmed because Acker had responded to the inmate complaint examiner's office as follows: "[n]o insulin documented or refusals signed on 2/28."

5

(Dkt. #33-1.) Plaintiff has since moved for sanctions based on this discrepancy. While a "district court has inherent power to sanction a party who had willfully abused the judicial process or otherwise conducted litigation in bad faith," *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (internal quotation omitted), plaintiff has failed to show by a preponderance of the evidence that Acker *willfully* made *false* statements regarding his refusal of insulin on February 28, 2025. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778-81 (7th Cir. 2016); *Smith v. Lind*, No. 14-cv-796-slc, 2021 WL 1546147, at *1 (W.D. Wis. Apr. 20, 2021), *aff'd sub nom. Smith v. Hautamaki*, No. 21-2004, 2023 WL 5163877 (7th Cir. Aug. 11, 2023). In particular, while plaintiff now has proffered evidence that Acker noted no "refusals signed on 2/28" (dkt. #33-1), various other providers who are not parties to this lawsuit explicitly noted in plaintiff's medical record that plaintiff refused almost all of his medication on February 28, 2025 (dkt. #16-1, at 401-04), and another non-defendant nurse responded to plaintiff's February 28 health service request that plaintiff had not received insulin because he had refused all medications for most of that day (*Id.* at 827). Without additional clarification as to the meaning of Acker's note (e.g., was it noting no refusal or plaintiff unwilling to sign documentation of his refusal), the court has no basis to go forward with his motions for sanctions either.

For all of the above reasons, the court concludes that plaintiff has not made a sufficient showing at this stage that he is likely to succeed on his medical care claims or that sanctions are warranted based on the statement made in Acker's declaration. Accordingly, plaintiff's motions for preliminary injunctive relief and sanctions will be denied. However, defendants are advised to make a better record of plaintiff's refusals, especially going forward, ideally by recording plaintiff's refusals on video.

ORDER

IT IS ORDERED that plaintiff Carl Self's motions for preliminary injunctive relief (dkt. #5, at 12-20 in Case No. 25-330; dkt. ##2-3 in Case No. 25-331) and motions for sanctions (dkt. #32 in both cases) are DENIED at this time.

Entered this 30th day of October. 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge